MERCEDES DEL TORO IRIZARRY, ETC., Plaintiff and Appellee, *v.*
JORGE BLASINI GONZÁLEZ, Defendant and Appellant.

No. R-67-329.     Decided November 21, 1968.

*Miguel Hernández Colón* for appellant. *Yamil Galib Frangie* and *Luisa María Capó* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By a document signed on March 25, 1964 before Notary Jorge Díaz Cruz, appellee, Mercedes del Toro Irizarry, leased to appellant, Jorge Blasini González, a rural property with an approximate area of 91.30 cuerdas located in the ward Montalva of Guánica. The terms of the lease contract which should be considered for the purposes of elucidating the contentions made in the present petition for review are the following:

"—A—The term of this lease is of one year counted as of today, it being provided that the lessee, Mr. Blasini González, shall be free to extend said term to ten (10) years by nine consecutive extensions of one year each, and it shall be understood that the lessee makes use of the annual option reserved to him unless he expressly waives the same and expresses his desire to terminate the lease by written notice to the lessor or her successors, given not less than sixty days prior to the date of the annual expiration of the term. During the extension the same terms and agreements of this contract shall govern.

"—B—The rental is TWO THOUSAND DOLLARS ($2,000) annually to be paid in advanced annual payments during the first thirty days of each year.

"—C—The lessor, Mercedes del Toro Pérez, grants option to her lessee, Jorge Blasini González, to purchase the leased property for the price of fifty thousand dollars ($50,000), which option shall be in force for the whole term of the lease and for the duration of this contract. Noncompliance with this option entails a penalty of five thousand dollars ($5,000) which shall be paid by the party liable for the noncompliance to the other.

"—D—The lessor or her successors are bound to ratify this contract by a public instrument recordable in the Registry of Property after complying with the legal proceedings, aimed at the present time to reinstating the lessor as the record owner of the property."

Disagreements arose between the parties which culminated in the filing by the lessor in July 1966 of an action requesting a determination on the extension of the term of the contract agreed upon,[1] nonfulfillment by the lessee of his obligations to pay the stipulated rent and of the exercise of the right of option of purchase, and the fixing of the corresponding compensation. The lessee counterclaimed on the ground that plaintiff had failed to comply with her obligation to reproduce the contract in a public deed and likewise requested the award of the damages caused thereby.

The controversy thus joined and after the hearing was held, the trial court rendered judgment on February 9, 1967 with the following pronouncements: (a) that the written contract of lease was valid and effective and represented the agreement entered into between the parties; (b) that upon defendant rejecting the request made by the plaintiff on March 16, 1966 to acquire the property according to the terms of the option clause, he had breached the contract, and should pay, therefore, the stipulated compensation of five thousand dollars; (c) that the defendant should pay the rents accrued for the years 1965–66 and 1966–67, the advance payment of which had been stipulated; and (d) that defendant must be evicted from the leased property on or before March 24, 1967. No pronouncement was made as to the matter alleged in the counterclaim for which reason the defendant requested findings of fact on the allegations of

---

[1] The plaintiff alleged that the term agreed upon was of one year only, in spite of which the defendant presented for her signature a contract which allowed its extension for nine consecutive years and granted an option to acquire the property; and that when she learned of the terms which appeared in the written document, the plaintiff rejected the contract.

the counterclaim and the conclusions of law derived therefrom considering that both parties had breached the promises they made.

On May 22, 1967 the trial court rendered an opinion and judgment to "decide the counterclaim"—in which the previous one of February 9 was incorporated by reference—the principal pronouncements of which were (a) to establish the violation by the plaintiff "for reasons of obstinacy" of the clause which bound her to reproduce the contract in a public deed subject to registration, and (b) to fix in $4,801.65 the damages caused to the lessee because of such breach. It ruled, further, that Blasini's nonfulfillments occurred after March 25, 1966, when he failed to exercise within the term granted the option to acquire the property, and April 30, 1965, in not paying the advance rent corresponding to the year 1965–66;[2] plaintiff's nonperformance, as of October 1, 1964, on which date the property already appeared recorded in her name, and therefore, she was able to execute the public deed necessary to produce the registration of the lease. We see, then, how the lessor's breach preceded that of the lessee.

In view of these two judgments, "having—after agreement between the parties—reexamined this case in its entirety," the court delivered a new opinion and judgment on October 10, 1967, which substantially reproduces that of May 22, except that the compensation was reduced from $4,801.65 to $3,340.85.

Both parties appealed.[3] The appellant lessee alleges that the trial court erred in the construction of the terms of the

[2] In this respect it relied on the fact that although the lessee had sent to the lessor the rent in question on April 30, 1965, the latter did not accept it and returned it, it being the obligation of the defendant, then, to deposit it in court at her disposal.

[3] The petition filed by the lessor was dismissed for lack of jurisdiction because it was presented after the 30-day term and hence the pronouncements of the judgment concerning the nonperformance on her part and the compensation which she must consequently pay became final.

option contract, and therefore, in imposing the payment of the penalty clause provided for the nonperformance, as well as in ordering the surrender of the property despite the fact that the nonperformance on the part of the lessor had preceded.

1. On March 16, 1966 the lessor addressed a written communication to the lessee reaffirming her repudiation of the contract, particularly insofar as the term of one year and the nine successive annual extensions are concerned, but stating that "for the purposes of putting an end to this disgusting matter, hereby I grant you until March 25, 1966 the opportunity to purchase my property for the cash price of Fifty Thousand Dollars," warning him that if he did not exercise the option within the term granted to him here, she would understand that it had been rejected. She further cautioned him to send her the one thousand dollars for the "retention and enjoyment" of the property from March 25, 1965 to March 25, 1966.

To these requirements the lessee merely reminded the lessor that she had returned the check sent to her on a former date for the rent corresponding to the year 1965–66, and that "if you are interested in said amount of money, I hope you will notify me and I will send it to you."

The trial court determined that the lessee had failed to perform the contract in not making use of the option of purchase granted to him by virtue of Clause II C despite the fact that he had been so requested by the lessor. It concluded that "the obligation imposed by said clause is a reciprocal and bilateral one, the nonperformance of which on the part of defendant compels him to pay to the plaintiff the penalty fixed therein." It erred.

In simple terms Castán[4] says that "the agreement by which a party [called grantor, promisor or optioner]

---

[4] 4 *Derecho Civil Español, Común y Foral* 43 (8th ed., 1956).

grants to the other [called optionee], for a fixed time and under certain conditions, the power, *left exclusively to his discretion*, of deciding as to the execution of a principal contract, is called a contract of option." Puig Brutau,[5] in referring to its effects, indicates that the optioner is confronted with the optionee, who "is free to perfect the contract or to desist from so doing within the time fixed." See, *Pérez v. Sampedro*, 86 P.R.R. 498, 502 (1962) and *Collazo v. Conesa*, 70 P.R.R. 144 (1949); *cf. Rossy v. Superior Court*, 80 P.R.R. 705, 715 (1958). In accordance with the doctrine, the Supreme Court of Spain holds that the perfection of the option depends exclusively on the optionee.[6] Puig Peña,[7] Federico de Castro,[8] and Guaroa Velázquez[9] express themselves in a like sense. See also, Ossorio y Gallardo, *El Contrato de Opción*, Madrid, 2d ed., 1930; José María Mengual, *La opción como derecho y como contrato*, R. G. de L. y J. 131 *et seq.* (1936); Ramón Gayoso, *Cuestiones sobre el contrato de compraventa*, Rev. D. P. 193 *et seq.* (1927).

The contractual clause binding the parties having been examined, it appears to be a valid contract of option with the typical unilateral obligation of the vendor previously indicated. Thus, it appears that (a) the lessor granted the lessee the power to decide as to the execution of the principal contract of sale, (b) exclusively to him, (c) for a certain term which coincides with that of the duration of the contract, and (d) without any formality other than the timely expression of his decision to the lessor.

---

[5] II–II *Fundamentos de Derecho Civil* 51 (1956).

[6] Judgments of March 23, 1945, X *Jurisp. Civil* 294 (2d Series) and January 18, 1947, XVII *Jurisp. Civil* 238 (2d Series).

[7] IV (2) *Tratado de Derecho Civil* 511.

[8] *La Promesa de Contrato*, III *Anuario de Derecho Civil*, 1163 to 1167 and 1177 to 1179.

[9] *Los Pequeños Contratos*, mimeograph, 1942.

■ Apparently the trial court interpreted the existence of bilateral obligations deriving them, perhaps, from the final provision which penalizes its nonperformance—"which shall be paid by the party liable for the noncompliance to the other"—but this language somewhat inaccurate is not sufficient to denaturalize and to deform the true agreement between the parties, an option under which only the unilateral obligation of the lessor-optioner arises. Therefore, the lessor is the only one upon whom the penalty in case of nonperformance may be imposed; by its own terms it does not reach the lessee and therefore, the finding that the refusal to exercise the option was subject to the payment of liquidated damages, constituted error.

2. The lessee-appellant challenges also the pronouncement of the judgment decreeing his eviction from the property for breach of contract with respect to the advance payment of the annual rent in 1965 and 1966. He argues that the lessor's nonperformance of the obligation to reproduce the contract in a public deed having preceded, he was relieved from the fulfillment of his promise, on the ground of the reciprocity which characterizes bilateral obligations.

■■ In bilateral or synallagmatic obligations the obligation assumed by each one of the parties to the contract has, as its consideration, the promise offered in exchange. It is called the mutual consideration. If this promise is not executed for any reason the correlative obligation ceases to have consideration. Usually these promises are performed simultaneously. But there are cases in which simultaneous execution cannot always take place as in the lease which because of its own nature—contract of successive performance—is opposed to such simultaneity. Thus the lessor should put the lessee in the peaceful enjoyment of the thing leased and then the reciprocal obligation of the payment of the rent agreed upon arises. Hence, when the lessor does not

furnish the lessee the promised enjoyment, the latter may invoke the exception of nonperformance of contract. Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* 70–72 (1964).

■ From the foregoing it appears that the obligation not fulfilled by the lessor could not support the defense of nonfulfilled obligation. It appears that the lessee, irrespective of the differences between the parties on the terms of the contract, has been uninterruptedly maintained in the enjoyment and possession of the leased property. His obligation to pay the rent, therefore, subsisted. The agreement concerning the registration of the contract in the Registry of Property is one of an accessory or complementary nature, *Municipality* v. *Vidal*, 65 P.R.R. 346 (1945), Judgment of the Supreme Court of Spain of January 5, 1935, 217 *Jurisp. Civil* 36. *Cf. Vélez* v. *Ríos*, 76 P.R.R. 806 (1954), the noncompliance of which did not relieve the lessee from the payment of the rent. The penalty for its nonperformance has no consequences in the sphere of reciprocity, and its only penalty is precisely the one obtained by the lessee, the recovery of damages caused therewith. See *González* v. *Goenaga*, 51 P.R.R. 174, 180 (1937).

It is true that the lessee sent the lessor the rental which fell due in March 1965 and it was returned. But since then, and despite the fact that the rentals for the subsequent years have become due, payments thereof have not been attempted nor have they been deposited in court. There only remains the provision announced by the lessee debtor of fulfilling his obligations subject to generating at most the consequences of the so-called *mora accipiendi* as to the payment of interest. *Central Vannina* v. *López*, 259 Fed. 198 (1st Cir. 1919).

Notwithstanding the foregoing and in view of the nature of the action exercised—declaratory decree—the pronouncement of the judgment should merely decree the rescission of

the contract between the parties, without prejudice to the exercise of the pertinent actions to procure the surrender of the property and the payment of the corresponding compensation for the possession of the property from the time of the noncompliance. Section 1077 of the Civil Code, 31 L.P.R.A. § 3052; § 8 of the Declaratory Judgment Law, 32 L.P.R.A. § 2998.

3. There are no grounds to disturb the pronouncement which imposed upon the two parties the payment of attorney's fees.

The judgment will be modified to eliminate the pronouncement which ordered the defendant-appellant to pay to the plaintiff-appellee the amount of the penalty, and as thus modified, it will be affirmed.

